## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

_____

|  |  |  |
|---|---|---|
| VAULT VENTURES LLC, | ) | |
| | ) | |
| Plaintiff/counterclaim defendant, | ) | Civil Action No. 1:14-cv-6861 |
| | ) | |
| v. | ) | Judge Jorge L. Alonso |
| | ) | |
| TIMOTHY COBB, | ) | |
| | ) | |
| Defendant/counterclaim plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SKYBOXX SPORTS LLC, | ) | |
| | ) | |
| Additional counterclaim plaintiff. | ) | |
| | ) | |

_____)

### COBB'S AND SKYBOXX'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND SANCTIONS PURSUANT TO 28 U.S.C. § 1927

Additional counterclaim plaintiff SkyBoxx Sports LLC ("SkyBoxx") and defendant-counterclaim plaintiff Timothy Cobb (collectively "SkyBoxx") move for summary judgment on the claims of Vault Ventures, LLC ("Vault") and on their counterclaims and for sanctions pursuant to 28 U.S.C. § 1927.

Vault sued Cobb, and then SkyBoxx, for breach of contract. SkyBoxx engaged Vault to produce a mobile game application and website. Vault admits that SkyBoxx paid Vault an initial deposit of $40,000 (Vault's Response to Amended Counterclaims, Doc. 47 at 2, ¶ 7). Vault is suing for the balance of the contract price, $110,000. SkyBoxx countersued for the return of the $40,000 and damages caused by Vault's breach. These facts are undisputed: SkyBoxx paid Vault $40,000, and Vault never provided the deliverables called for under the contract.

Vault thinks it is now entitled to the rest of the contract price and brought this action to collect the $110,000. After six months of discovery, it is now apparent that Vault's business philosophy is "Start but don't finish. Overpromise and underdeliver." For example, Vault paid the initial fee to establish its limited liability company in the state of Delaware, but then failed to pay any annual taxes, file any annual reports, or register to do business in Illinois. In the same vein, Vault took the initial payment from SkyBoxx, but never actually produced the contracted-for application.

Vault has adapted that business strategy to this litigation. Vault paid the fee to file suit, but then never prosecuted it. It has taken no depositions and has skipped court appearances. Indeed, from the beginning, Vault lacked the capacity to file and maintain this lawsuit. As early as May 6, 2015, counsel for Vault has been on notice of this fatal flaw. But instead of promptly dismissing this action, Vault and its counsel attempted to mask the defect with claims of a magical "merger" that fixed its problem. Vault's pursuit of its frivolous claim is a textbook example of harassment and litigation abuse.

## I. FACTUAL BACKGROUND

Cobb is a founder and officer of SkyBoxx, and on behalf of SkyBoxx engaged Vault to produce a mobile fantasy football application and website to be operated in conjunction with the Georgia State Lottery. (Declaration of Timothy Cobb ("Cobb Dec.") at ¶¶ 1, 2) SkyBoxx and Vault entered into a contract dated April 20, 2014; that contract was later replaced with another unsigned contract dated June 2, 2014. (Cobb Dec. at ¶ 3, Exs. A and B) The contract price for the project was $150,000, with a $40,000 down payment. (Cobb Dec., Ex. B at 9) SkyBoxx paid Vault the $40,000. (Cobb Dec. at ¶ 4) The application was to be rolled out by early August 2014. Vault, however, never delivered a finished product or usable work product to SkyBoxx. (Cobb

Dec. at ¶ 5) SkyBoxx suspended payments to Vault when it was apparent Vault was not going to deliver the application. (*Id.*)

Vault overpromised from the onset of its relationship with SkyBoxx. The June 2, 2014 contract with SkyBoxx called for a "beta release" of the application by July 24, 2014 and a full release by August 25, 2014. (Cobb Dec., Ex. B at 9) Vault apparently was not capable of developing the application itself, so it retained a separate company, Vault Innovations Group, LLC ("VIG") to design and develop the product. (Declaration of Marianne Holzhall ("Holzhall Dec."), ¶ 5 and Ex. 4) However, the June 16, 2014 contract between Vault and VIG called for a completion date of September 8, 2014—almost two weeks after the August 25 date for full release under the SkyBoxx contract. (Holzhall Dec., Ex. 4 at 6)

When Vault failed to produce a usable application by the beta release date, Cobb informed Vault of the effect upon SkyBoxx of Vault's delay, as well as his expectations for the project going forward. (Holzhall Dec.¶¶ 6-8 and Exs. 5-7) In response, Vault put the project on hold and promptly contacted its lawyer. (Holzhall Dec., ¶¶ 9, 10 and Exs. 8, 9) Vault filed suit for the entire contract price on September 5, 2014, days before VIG was scheduled to complete the application that Vault had promised to deliver to SkyBoxx in August. Whether the rush to the courthouse was an attempt to camouflage Vault's inability to perform or to extract a settlement, it was done with little prefiling investigation, even as to Vault's own corporate status.

Over the course of the litigation, Vault has made the following statements with regards to its corporate status:

- September 5, 2014: "Vault is an Illinois liability company [sic] with a place of business in Chicago, Illinois." (Doc. 1 at 1, ¶ 1)

- January 26, 2015: "Vault is an Illinois liability company [sic] with a place of business in Chicago, Illinois." (Doc. 12 at 4, ¶ 1)

- May 26, 2015: "Vault is a Delaware LLC with a principal place of business in Chicago, Illinois." (Doc 29 at 1, ¶ 3)

- June 22, 2015: "On June 18, 2015, Vault Ventures LLC merged with Vault Ignition Inc. Vault Ignition Inc [sic] is an Illinois corporation in good standing with a principal place of business in Chicago, Illinois." (Doc. 47 at 1, ¶ 3)

- July 14, 2015: "On June 16, 2015, Vault Ventures LLC merged with Vault Ignition Inc. by operation of a Merger Agreement." (Doc. 56 at 1, ¶ 1)

- July 30, 2015: "On June 16, 2015, as shown in attached Exhibit A, Vault Ventures LLC merged with Vault Ignition Inc. The surviving entity was renamed Vault Ventures Inc. As a result of the merger, Vault Ventures LLC's breach of contract claims have been transferred to Vault Ventures Inc. In addition, since Vault Ventures Inc. is the surviving entity of the merger, Vault Ventures LLC no longer exists." (Doc 58 at 1, ¶ 2)

- August 11, 2015: "Vault Ventures LLC merged with Vault Ignition Inc. and the surviving entity is Vault Ventures Inc." (Doc. 62 at 1)

- August 21, 2015: "Moreover, the very first sentence of the correspondence [from the Illinois Secretary of State rejecting the Articles of Merger and Articles of Amendment] confirms that the Articles of Merger were indeed filed. It states that the SOS was returning two of the reports submitted, 'BCA 11.39' and 'BCA 10.30.' There can be no documents to return unless they were first filed." (Doc. 66 at 3)

- October 22, 2015: Vault "is in the process of dissolution." (Holzhall Dec., Ex. 1, at 3:2-3)

Upon its own investigation, SkyBoxx learned that Vault Ventures, LLC is a Delaware limited liability company, formed on June 26, 2013; however, Vault never filed its annual reports or paid its annual tax, and therefore ceased to be in good standing as of June 1, 2014, three months before it filed this action. (Holzhall Dec., ¶ 3 and Ex. 2) Vault has never registered to transact business in Illinois as a foreign limited liability company. (Holzhall Dec., ¶ 4 and Ex. 3)

Despite the dereliction of its organizational duties, Vault conducts considerable business in Illinois. Its principal place of business is in Chicago. (Doc. 29, ¶ 3) Vault directs its customers to remit payment to its Chicago bank or Chicago office. (Holzhall Dec., ¶¶ 11, 12 and Ex. 10, 11) Vault solicits business at its Chicago location, and has identified Chicago as a target market.

- 4 -

(Holzhall Dec., ¶¶ 13, 20 and Exs. 12, 19) It has sought investments by holding itself out as an Illinois limited liability company. (Holzhall Dec., ¶ 14 and Ex. 13) Over the course of Vault's dealings with SkyBoxx and Cobb, it hosted numerous meetings at its Chicago facilities. (Holzhall Dec., ¶¶ 15-19 and Exs. 14-18)

On June 22, 2015, Cobb and SkyBoxx moved for summary judgment and for sanctions on the basis that Vault's failure to register to do business in Illinois deprived it of the capacity to maintain suit in the state. (Doc. 41) That same day, Vault's counsel wrote, "Please be advised that on 6/18/2015 Vault Ventures LLC merged with Vault Ignition Inc [sic] as shown in the attached….I believe the merger also moots the summary judgment motion." (Holzhall Dec., ¶ 21 and Ex. 20)[1] In light of that representation, Cobb and SkyBoxx withdrew their motion pending investigation into Vault's so-called merger.

Vault's corporate machinations did not moot Cobb's and SkyBoxx's motion; on the contrary, they were calculated to further obscure Vault's corporate status. First, Vault Ventures is still not in good standing in Delaware, which alone would prohibit a merger.  (Holzhall Dec., ¶ 3 and Ex. 2)  Moreover, the merger documents submitted to the Illinois Secretary of State were deficient:

- The Articles of Merger reflected only that they were tendered to the Illinois Secretary of State on June 18, 2015, bearing the caveat, "Acceptance and 'Filed' Date Established Only After Review." (Doc. 58-1, at 2)

- The state agency reviewed and *rejected* the Articles of Merger for failure to submit the necessary fee, for failure to correctly identify Vault Ignition Inc., and for failure to submit the plan of merger. (Doc. 62-1, at 2)[2] There is no evidence

---

[1] According to Vault's counsel, Vault Ignition Inc. is an Illinois corporation. (Holzhall Dec., ¶ 21 and Ex. 20)

[2] In moving to substitute the merged corporation as plaintiff in this action, Vault filed a copy of an "Agreement and Plan of Merger." (Doc. 58-1 at 8-11) With its reply, Vault filed the signature page of what appears to be the Agreement and Plan of Merger – with different signatures. (Doc.

- 5 -

that either Vault Ventures or Vault Ignition submitted the necessary documents and fee.

• The Agreement and Plan of Merger filed with the Court included inaccuracies, including the material misrepresentation that Vault Ventures is in good standing in the State of Delaware. (*See* Doc. 58-1 at 9, ¶ 2(a))

Finally, the Delaware Limited Liability Company Act provides that no merger of a Delaware LLC is effective until a certificate of merger is filed with the Delaware Secretary of State. 6 Del. Code § 18-209(c), (d). The Court found no evidence that this was done, and therefore denied Vault's motion to substitute. (Doc. 67) Following denial of the motion to substitute, Vault's organizational status grew even more muddled: After twice failing to attend scheduled status conferences, on October 22 Vault's counsel appeared and advised the Court that Vault "in the process of dissolution." (Holzhall Dec., Ex. 1 at 3:2-3)

## II. ARGUMENT

Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

### A. Vault Lacks the Capacity to Sue.

The Illinois Limited Liability Company Act bars a foreign limited liability company that is transacting business in Illinois from maintaining any civil action in any court of the state unless it has been admitted to transact business in Illinois. 805 ILCS 180/45-45(a). That provision prohibits suit both in Illinois state courts and in federal district courts exercising diversity jurisdiction. *RehabCare Group East, Inc. v. Camelot Terrace, Inc.*, No. 10 C 2350,

_____

62-1 at 9) Though the Court gave Vault the opportunity to explain this discrepancy, Vault did not do so.

- 6 -

2010 WL 5174369 *3 (N.D. Ill. Dec. 15, 2010). The *RehabCare Group East* court concluded that the unauthorized transaction of business within Illinois warranted dismissal of the action, rather than a stay in the hope that the plaintiff might cure the defect. 2010 WL 5174369 *5.

Vault undoubtedly is "transacting business" in Illinois without being admitted to do so, and therefore cannot maintain this suit. It is undisputed that Vault is a moribund Delaware limited liability company, and that it has never obtained authority to transact business in Illinois. Moreover, it is undisputed that Vault transacts business in Illinois: Vault's principal place of business is in Chicago, it banks in Chicago, it targets customers in Chicago, it hosts meetings for its customers in Chicago and it demands payment from them in Chicago.

Like Illinois, Delaware, prohibits a limited liability company that has ceased to be in good standing from filing or maintaining a lawsuit there. 6 Del. Code § 18-1107(l). In fact, Delaware courts deem a limited liability company's failure to maintain good standing to be an insurmountable bar to maintaining suit. In *HWI Partners, LLC v. Choate, Hall & Stewart LLP*, Civil Action No. 13-918-RGA-MPT, 2013 WL 6493118 (D. Del. Dec. 11, 2013), the court found that the plaintiff's filing suit when it was not in good standing for failure to pay its annual tax was such a fatal flaw that it deprived the court of subject matter jurisdiction and could not be cured by the plaintiff's subsequent payment of back taxes. *Id.* at *3. Under both Illinois and Delaware law, Vault lacks capacity to sue and may not maintain its action in this Court. SkyBoxx and Cobb are entitled to summary judgment on Vault's claims.

**B.      Cobb and SkyBoxx Are Entitled to Summary Judgment on Vault's Claim.**

To prevail on a claim for breach of contract, a plaintiff must prove the existence of a valid and enforceable contract, plaintiff's performance, defendant's breach of the terms of the contract, and resulting damages. *Spitz v. Proven Winners North America, LLC*, 759 F.3d 724, 730 (7th Cir. 2014). Even assuming that there was a valid agreement between Vault and SkyBoxx, Vault

cannot recover under it, because Vault materially breached the agreement by failing to deliver the promised fantasy football application.

A party who materially breaches a contract cannot enforce the terms of the contract that benefit him or recover damages from the other party to the contract. *Goldstein v. Lustig,* 154 Ill. App. 3d 595, 507 N.E.2d 164, 168 (Ill. App. 1987). Where one party materially breaches an agreement, the other party is discharged from his duty to perform. *Freight Train Advertising, LLC v. Chicago Rail Link, LLC*, No. 11 C 2803, 2012 WL *5 (N.D. Ill. Nov. 14, 2012). A material breach occurs where the promise not performed is of such importance that the contract would not have been made without it. *Id.* (citing *Haisma v. Edgar,* 218 Ill. App. 3d 78, 578 N.E.2d 163, 168 (Ill. App. 1991)).

Vault admits that SkyBoxx paid the initial deposit of $40,000 to Vault. It is equally undisputed that Vault did not produce a functional application, a usable website, or any of the other deliverables under the contract. In fact, VIG was not to complete the application until two weeks *after* Vault promised to deliver it to SkyBoxx. Vault failed to perform its primary obligations under the parties' agreement, and therefore cannot recover for any alleged breach by SkyBoxx.

### C. Cobb and SkyBoxx Are Entitled to Summary Judgment on Their Counterclaim.

Vault cannot prevail on its claim, because Vault never finishes what it starts. The same material breaches that doom its claims– failure to deliver what it promised under the contract – establish SkyBoxx's claim for breach of contract. Because Vault did not perform its obligations under the agreement, SkyBoxx is entitled to summary judgment in its favor on its counterclaim and the return of all payments made to Vault for the work that was never performed and the application that was never delivered.

**D.      Cobb and SkyBoxx Are Entitled to Sanctions Under 28 U.S.C. § 1927.**

Section 1927 authorizes sanctions against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. A court may impose § 1927 sanctions when an attorney has acted in an "objectively unreasonable manner" by engaging in "serious and studied disregard for the orderly process of justice," *Pacific Dunlop Holdings, Inc. v. Barosh,* 22 F.3d 113, 119 (7th Cir.1994); pursued a claim that is "without a plausible legal or factual basis and lacking in justification," *id.;* or "pursue[d] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound," *Kapco Mfg. Co. v. C & O Enters., Inc.,* 886 F.2d 1485, 1491 (7th Cir.1989). Furthermore, the Seventh Circuit has interpreted § 1927 "to impose a continuing duty upon attorneys to dismiss claims that are no longer viable." *Dahnke v. Teamsters Local 695,* 906 F.2d 1192, 1201 n. 6 (7th Cir.1990).

Vault and its counsel sued for breach of contract, though early on Vault knew it could not fulfill its obligations.  A prefiling review of the documents in Vault's possession would have revealed that VIG was not scheduled to complete the application until well after the application was to be furnished to SkyBoxx. Instead, Vault and its counsel forged ahead and filed suit.

Vault and its counsel also knew of Vault's incapacity to maintain suit months ago and not only persisted in their pursuit of a lawsuit that was dead in the water, but trumped up a "merger" that sent the defendants and the Court on a snipe hunt. Over the course of the litigation, Vault's counsel has represented to the Court and the defendants that "Vault is an Illinois liability company"; "Vault is a Delaware LLC"; "Vault Ventures merged with Vault Ignition Inc."; and Vault "is in the process of dissolution." (*See supra* at 4) Most recently, on November 2, 2015, Vault's counsel advised that "Vault may more than likely resolve [the lawsuit] through bankruptcy." (Holzhall Dec. ¶ 16)

Vault's attorney apparently elected to forego a simple and customary prefiling inquiry into Vault's organizational status would have revealed that Vault is not an Illinois limited liability company, nor is it authorized to do business in Illinois. The absence of a reasonable prefiling investigation aside, SkyBoxx's counsel advised Vault's attorney of the issue of Vault's incapacity to maintain suit on May 6, 2015; in June 2015, their motion for leave to amend their pleadings and their motion for summary judgment both squarely raised the issue of Vault's lack of capacity.

By June 2015, Vault should have dismissed its claim, but it did not do so. Instead, Vault and its counsel repeatedly asserted the existence of a cure-all "merger," Because Vault failed to establish that a merger occurred, the Court denied Vault's motion to substitute. Even then, Vault and its counsel did not dismiss its claims (though Vault's counsel did stop showing up for status conferences until threatened with dismissal for want of prosecution).

Vault's counsel not only initiated and recklessly pursued a frivolous lawsuit, but did so in an unreasonable and vexatious, if not downright offensive, manner. Below is a just a short summary of Vault's counsel's actions, over and above his on-going attempts to conceal Vault's inability to maintain suit:

- On May 7, 2015, just one day after Cobb and SkyBoxx questioned Vault's ability to file and maintain this action, Vault's counsel served written discovery comprising a total of 19 interrogatories (some with multiple subparts) directed to Cobb and SkyBoxx and 44 requests for production directed to Cobb. (Holzhall Dec., ¶¶ 23, 24, 26 and Exs. 21, 22, 24) Rather than drafting his own requests for production, however, Vault's counsel relied on word processing magic, merely copying the requests served earlier that day by the defendants, changing a few words, and sending them right back. (*Compare* Holzhall Dec., Ex. 23, Ex. 24) As a result, Vault's requests included demands that Cobb and SkyBoxx produce "all documents referring or relating to Timothy Cobb" and "all documents referring to defendants." Vault's counsel rebuffed the defendants' objections that the requests were hopelessly overbroad, instead shifting the burden back to defendants with the demand, "Please identify each specific request you believe is overly broad. In addition, state with particularity the reasons for your belief that the identified

request is overly broad..." (Holzhall Dec., ¶ 27, Ex. 25) Any attorney familiar with discovery practice would have known that these tactics were potentially sanctionable, but Vault's attorney charged right on ahead.

- On June 8, 2015, the parties exchanged their responses to written discovery. Though Cobb and SkyBoxx had requested "All documents concerning or relating to the incorporation and corporate status of Vault, including without limitation any documents filed with the Secretaries of State of Illinois or Delaware," Vault did not produce documents responsive to this request, either ignoring or consciously attempting to conceal the fatal defect dooming Vault's case. Moreover, the majority of Vault's 1,700-page production consists of randomly arranged emails (including numerous duplicates, incomplete email threads and references to attachments that were omitted from the production), as well as a PowerPoint presentation on oil fracking, which has nothing to do with the claims or defenses in this case.

- Despite Vault's own failings in discovery, Vault's counsel demanded an immediate and premature meet and confer regarding SkyBoxx's interrogatory responses, one of which cited documents that SkyBoxx was preparing to produce and one that SkyBoxx agreed to supplement following additional discovery. (Holzhall Dec. ¶ 28 and Ex. 26)

- On May 26, 2015, Vault's counsel filed its response to the amended counterclaim that had never been filed because of the ongoing questions as to Vault's organizational status. (Doc. 29) As a result, Cobb and SkyBoxx had to devote resources to moving to strike the answer, to keep the pleadings in some semblance of order.

- Over the course of the litigation, Vault's counsel has used, interchangeably, three different email addresses and two different addresses, Takiguchi & Vogt, LLP in Oak Brook and Keith Vogt, Esq. in Oak Park. When asked to confirm his correct email address, he failed to respond. (Holzhall Dec., ¶ 28 and Ex. 26). According to Illinois Secretary of State records, Takiguchi & Vogt, LLP expired on May 13, 2015. (Holzhall Dec., ¶ 29, Ex. 27) However, Mr. Vogt continued to use the Takiguchi and Vogt, LLP name and address on correspondence, including May 14, 2015 email correspondence with the Court and June 8, 2015 email correspondence with defendants' counsel. (Holzhall Dec., ¶¶ 28, 30 and Exs. 26, 28) Apart from the ethical implications,[3] communication with opposing counsel should not require the use of every current and former address in the hope that one will connect.

---

[3] Model Rule of Professional Conduct 7.5 provides that a lawyer shall not use a professional designation that is misleading, or imply that he practices in a partnership when that is not the case.

- Finally, after Magistrate Judge Gilbert questioned Vault's intention to continue to prosecute its case, Vault's counsel proposed "ramping up" to "Summary judgment; trial etc…" (Holzhall Dec., ¶ 31, Ex. 29)

If Vault's counsel had made a simple prefiling inquiry, this lawsuit would have never been brought. Even lacking the prefiling inquiry, Vault's counsel has known for months that Vault lacks the capacity to file and maintain this lawsuit, and has not only continued to pursue it, but to do so in a manner aimed to create wholly unreasonable hurdles in the defendants' path and to run up their fees. Vault now threatens to file for bankruptcy and stall this case for months, if not years. This latest tactic is nothing more than a threat to continue Vault's waste of the Court's and SkyBoxx's resources.

Therefore, Cobb and SkyBoxx ask that the Court require Vault's attorney bear the consequences of his decisions and to pay the attorneys' fees and costs incurred by Cobb and SkyBoxx since the filing of this frivolous lawsuit.

## III.    CONCLUSION

For the foregoing reasons, Cobb and SkyBoxx respectfully request that Court grant its motion for summary judgment and award them their attorneys' fees and costs incurred in connection with this suit, pursuant to 28 U.S.C. § 1927.

Dated:  November 5, 2015                                 Respectfully submitted,

/s/ Annette M. McGarry
Annette M. McGarry (IL #6205751)
Marianne C. Holzhall (IL #6204057)
McGarry & McGarry, LLC
120 North LaSalle Street, Suite 1100
Chicago, Illinois 60602
(312) 345-4600
Email: amm@mcgarryllc.com

- 12 -

Richard J. Oparil (N.D. Ill. Bar No. 409723)
PORZIO, BROMBERG & NEWMAN P.C.
1200 New Hampshire Avenue, NW
Washington, DC 20036
(202) 517-1888
Email: rjoparil@pbnlaw.com

*Counsel for Defendant/Counterclaim Plaintiff Timothy Cobb and Additional Counterclaim Plaintiff SkyBoxx Sports LLC*

Of Counsel:

Kevin M. Bell
Caroline C. Maxwell
PORZIO, BROMBERG & NEWMAN P.C.
1200 New Hampshire Avenue, NW
Washington, DC 20036
(202) 517-1888